```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------x

DINA ROACH, EVELINA CRUZ, ARCHIL
LOMIDZE and ZAKIR HOSSAIN,
Individually and on behalf of all            AMENDED MEMORANDUM &
others similarly situated,                   ORDER
                                             23-CV-3410 (EK)(PK)
                Plaintiffs,


        -against-


THE CITY OF NEW YORK, DAVID DO, Chair
of the NYC Taxi and Limousine
Commission, ANDREW RABIN and ANITA
ARMSTRONG,

                Defendants.

---------------------------------------x
```
ERIC KOMITEE, United States District Judge:

Plaintiffs Dina Roach, Evelina Cruz, Archil Lomidze and Zakir Hossain are livery drivers in New York City.[1] They filed this action against the City of New York and several individual defendants, on behalf of themselves and a putative class of similarly situated drivers. They claim defendants violated the federal Constitution and New York state law when they suspended plaintiffs' for-hire vehicle licenses before a hearing. They seek damages, a declaratory judgment that the City's license suspension process violates federal and city law, an injunction prohibiting the City from summarily suspending

---

[1] The individual defendants are David Do, the Chair of the City's Taxi and Limousine Commission, and Commission attorneys Andrew Rabin and Anita Armstrong.

drivers before a hearing, and an injunction against certain aspects of the post-suspension hearing process.

Defendants — all jointly represented — have moved to dismiss the complaint for failure to state a claim.  They argue that the Second Circuit has already considered and rejected most of plaintiffs' due process claims, and that the remaining claims are meritless as a matter of law.  For the reasons set forth below, the motion to dismiss is granted.

## I.   Background

**A.   Administrative Regime**

New York City's Taxi and Limousine Commission ("TLC") regulates local taxicabs and for-hire vehicles.  A TLC license is a required certification for taxicab and for-hire drivers to operate in the City.  Section 19-512.1(a) of the New York City Administrative Code permits the TLC to "suspend a taxicab [or] for-hire vehicle license" on a showing of good cause "relating to a direct and substantial threat to the public health or safety and prior to giving notice and an opportunity for a hearing."

Pursuant to Section 19-512.1(a), the TLC promulgated an administrative regulation, 35 R.C.N.Y. § 68-15(d).  That regulation allows the TLC to "summarily suspend a License based upon criminal charges pending against a Licensee if the Chairperson believes that the charges, if true, would

2

demonstrate that continued licensure would constitute a direct and substantial threat to public health or safety." R.C.N.Y. § 68-15(d)(1). The regulation identifies certain charges that warrant summary suspension, including all felonies and specified misdemeanors considered to pose a threat to public safety. *Id.* §§ 68-15(d)(1)(i)-(ii).

The TLC commonly suspends licenses based upon such specified charges without a hearing. *See* First Am. Compl. ("FAC") ¶ 1, ECF No. 12. Once his or her license is suspended, the driver may request a *post*-suspension hearing before an Administrative Law Judge in the City's Office of Administrative Trials and Hearings. R.C.N.Y. § 68-15(a)(2)-(3). Before the Second Circuit decided *Nnebe v. Daus*, 931 F.3d 66 (2d Cir. 2019) ("*Nnebe 2019*"), this hearing was "designed to determine whether (a) the suspended driver ha[d] been charged with a crime, (b) the charge [was] still pending, and (c) there [was] a nexus between the charged crime and public health or safety." *Nnebe v. Daus*, 184 F. Supp. 3d 54, 68 (S.D.N.Y. 2016) ("*Nnebe 2016*").[2] In *Nnebe 2019*, however, the Second Circuit held that this categorical approach violated due process. 931 F.3d at 70, 88. The Circuit counseled that due process requires a hearing officer to consider *individualized* evidence of a given driver's

---

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

3

"ongoing danger to health and public safety" before suspending his or her license. *Id.*

In response to *Nnebe 2019*, the TLC made its hearing process more driver-specific. The ALJ continues to assume the truth of the pending criminal charges, but now looks to the facts alleged in the individual case. Thus, the TLC must now "prove by a preponderance of the evidence that the charges pending against the Respondent, if true, demonstrate that the continuation of the Respondent's License during the pendency of criminal charges would pose a direct and substantial threat to public health or safety." R.C.N.Y. § 68-15(d)(5). Both parties may present evidence related to:

> (a) The particular facts and circumstances underlying the criminal charges, including the connection between the alleged offense and the Respondent's duties and responsibilities as a driver licensed by the Commission;
>
> (b) The Respondent's driving record . . . ;
>
> (c) The Respondent's previous criminal record, or lack thereof;
>
> (d) The Respondent's character and standing in the community; and
>
> (e) Any other evidence relevant to whether continued licensure of the Respondent during the pendency of criminal charges would pose a direct and substantial threat to public health or safety.

*Id.* § 68-15(d)(5)(a)-(e).

4

Upon receiving the ALJ's recommendation, the TLC chairperson issues a final decision either accepting, rejecting, or modifying that recommendation. *Id.* § 68-15(d)(7). The Second Circuit has observed that, since *Nnebe 2019*, the chairperson has handled recent cases "evenhandedly, consistently adopting the ALJs' recommendations." *Nnebe v. Daus*, Nos. 21-173-CV, 21-170-CV, 2022 WL 1220204, at *1, *3 (2d Cir. Apr. 26, 2022) ("*Nnebe 2022*").

**B.   Factual Background**

The following factual allegations are drawn from the operative complaint. The Court takes all facts alleged therein as true and draws all reasonable inferences in plaintiffs' favor. *See In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007).

The named plaintiffs are for-hire vehicle drivers. *See* FAC ¶¶ 139, 146, 152, 158. Each plaintiff was arrested and charged with a felony or one of the enumerated misdemeanors. *Id.* ¶¶ 17, 22, 27, 32. The TLC summarily suspended their licenses pursuant to Section 68-15. *Id.* Each plaintiff requested a hearing to challenge the suspension. *Id.* ¶¶ 20, 25, 30, 36. At each plaintiff's hearing, the TLC presented the "police report and / or the criminal complaint" to establish the facts alleged against the specific plaintiff. *Id.* ¶ 128.

***Dina Roach and Evelina Cruz.*** At the post-suspension hearings for Dina Roach and Evelina Cruz, the parties presented the "arrest charges and the pending charges" as well as other specific facts, such as the "facts underlying the arrest and [the relevant licensee's] record[s]." *Id.* ¶¶ 20, 25, 145, 151. The ALJs recommended Ms. Roach's and Ms. Cruz's reinstatements. *Id.* ¶¶ 20, 25. The chairperson accepted those recommendations, and their licenses were reinstated. *Id.* ¶¶ 21, 26.[3]

***Archil Lomidze and Zakir Hossain.*** At the post-suspension hearings held for Archil Lomidze and Zakir Hossain, the TLC opposed reinstating their licenses and presented the pending charges in support. *Id.* ¶¶ 28, 30, 162. The ALJ recommended extending their suspensions, and the chairperson accepted those recommendations. *Id.* ¶¶ 30, 156, 165. The pending criminal charges against Mr. Lomidze were eventually dismissed, though it is not entirely clear from the complaint whether his license was reinstated. *Id.* ¶ 31. Mr. Hossain's suspension remains in effect and his criminal charges remain pending. *Id.* ¶ 36.

---

[3] The plaintiffs whose licenses were reinstated still have standing to pursue this action (and their claims are not mooted by the reinstatement). "[A] post-deprivation proceeding cannot remedy an initial failure to satisfy a requirement that there have been a pre-deprivation hearing." *Gupta v. City of Norwalk*, No. 98-CV-2153, 2007 WL 988692, at *4 (D. Conn. Mar. 31, 2007) (citing *Todaro v. Norat*, 112 F.3d 598, 599-600 (2d Cir. 1997)); *see also Manza v. Newhard*, 470 F. App'x 6, 9 (2d Cir. 2012) (a sufficient post-deprivation remedy "does not address whether [plaintiff] received sufficient pre-deprivation process"). The defendants do not argue otherwise.

The plaintiffs seek (1) a declaration that the summary suspension practice violates the Due Process Clause; (2) an order enjoining the defendants from suspending TLC licenses before "meaningful hearings"; (3) an order mandating that any "unlawfully suspended licenses be reinstated"; (4) compensatory damages; and (5) punitive damages. *Id.* ¶ 168.[4]

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor. *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). At the same time, however, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

---

[4] Plaintiffs also seek a "declaration that the summary suspension policy, TLC Rule 68-15, and the presumption of guilt policy are in violation of the NYC Code." FAC ¶ 168. But considering its decision not to exercise supplemental jurisdiction, *see infra* at Part III.C, the Court need not consider whether the summary suspension policy violates City law.

7

## III. Discussion

### A. Procedural Due Process

The plaintiffs claim that the TLC's summary pre-hearing suspension practice (and possibly its post-suspension hearing procedures) violate their Fourteenth Amendment right to procedural due process. *See* FAC ¶¶ 178-181. These arguments are squarely foreclosed by controlling Second Circuit precedent.

As plaintiffs *themselves recognize*, *see* Pls.' Opp'n Br. 11, ECF No. 23, *Nnebe 2011* bars their challenge to the summary suspension process.[5] There, the Second Circuit unambiguously held that the City is "not required to grant a driver a hearing before suspending his license because of an arrest." *Nnebe 2011*, 644 F.3d at 158. The Court therefore need not go any further. The procedural due process challenge to the TLC's summary suspension process is dismissed.

Plaintiffs also seem to allege that the TLC's current *post*-suspension hearing procedures violate procedural due process, though they do not expound this argument in their briefing. *See* FAC ¶¶ 118-132, 178. In substance, plaintiffs allege that because "hearings are not scheduled automatically," the TLC "relies on the police reports and / or the criminal complaint," and the ALJ does not assess the truth of the

---

[5] Page numbers in citations to briefs refer to native pagination.

8

underlying charges, the existing post-suspension procedures are inadequate. *Id.* ¶¶ 118, 124, 128.

The Second Circuit has rejected these arguments, too. Following *Nnebe 2019*, a neighboring district court reviewed and upheld the TLC's revised post-suspension hearing procedures. *See Nnebe 2020*, 510 F. Supp. 3d at 187-88, 198. The Second Circuit affirmed. *Nnebe 2022*, 2022 WL 1220204, at *4. And the instant complaint does not allege that the TLC's procedures have changed in any way since that affirmance. In fact, it describes processes entirely consistent with *Nnebe 2020*. Here, as in *Nnebe 2020*, the complaint alleges that licensees must request a hearing (rather than have one scheduled automatically), *see* FAC ¶ 118, and that the TLC relies mainly on the "police report and / or the criminal complaint," along with any prior record. *Id.* ¶¶ 20, 25, 128. These processes survive constitutional scrutiny for the same reasons outlined in *Nnebe 2020* and later affirmed by the Second Circuit. *See* 510 F. Supp. 3d at 188, 192.

Put bluntly, plaintiffs' counsel has filed procedural due process claims that are clearly foreclosed by existing Second Circuit precedent. Indeed, their briefing concedes as much. Pls.' Opp'n Br. 11.[6] To be sure, plaintiffs' counsel *claims* that there *might* be a basis for modifying Second Circuit

---

[6] Specifically, plaintiffs' brief "concede[s] that [the procedural due process] claim is contrary to the Court of Appeals' 2011 decision," and expressly consents to dismissal of that claim. Pls.' Opp'n Br. 11.

precedent upholding summary suspension, because *Nnebe 2011* and its successors rely on the (supposedly faulty) assumption that the "fact of an arrest provided sufficient indicia of a threat to public health and safety to permit an immediate suspension at a point at which little was known." Pls.' Opp'n Br. 11 n.4 (citing *Nnebe 2019*, 931 F.3d at 82-83). But this assumption was operative when *Nnebe 2020* (and *Nnebe 2022*) upheld the TLC's post-suspension hearing procedures.[7]

**B. Substantive Due Process**

Plaintiffs also claim that their license suspensions violated their substantive due process rights. FAC ¶¶ 4, 182-84. While the Second Circuit has not directly foreclosed this claim, it too fails.

Under the substantive due process doctrine, the state may not infringe on certain "fundamental" liberty interests "no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993). When no fundamental interest is at stake, a court will find a substantive due process violation "only when a plaintiff can demonstrate that there is no rational relationship" between the government action

---

[7] After issuing its original order, ECF No. 29, the Court engaged in a substantial colloquy with plaintiffs' counsel regarding the circumstances in which it is appropriate to bring arguments foreclosed by existing circuit precedent. *See* ECF Nos. 31, 33, and 35.

10

and a "legitimate legislative purpose." *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284 (2d Cir. 2015); *accord Doe v. Franklin Square Union Free Sch. Dist.*, 100 F.4th 86, 94 (2d Cir. 2024).

The first step, therefore, is to determine whether plaintiffs have alleged an infringement of a fundamental right. A plaintiff bears the burden of establishing that such a right exists. *Michael H. v. Gerald D.*, 491 U.S. 110, 125 (1989). A fundamental right is one that is "deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 231 (2022). And any substantive due process analysis must, in the interest of judicial restraint, "begin with a careful description of the asserted right." *Flores*, 507 U.S. at 302.

Plaintiffs have not alleged infringement of a fundamental right. They argue that the fundamental liberty interest at stake is their right to "engage in any of the common occupations of life." Pls.' Opp'n Br. 12 (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972)). But this description flouts the Supreme Court's command, in the context of substantive due process, to define rights carefully. *Flores*, 507 U.S. at 302. For example, the *Flores* Court rejected the respondents' generalized description of the relevant right as "freedom from physical restraint." *Id.* Instead, it

11

concluded that the relevant right was: "the right of a child who has no available parent, close relative, or legal guardian, and for whom the government is responsible, to be placed in the custody of a willing-and-able private custodian rather than of a government-operated or government-selected child-care institution." *Id.*

Thus, an appropriately specific description of the right at issue here would be: "the . . . right of a taxi driver who has been arrested and charged with a crime to have the suspension of his license lifted pending resolution of his criminal case." *See Nnebe 2016*, 184 F. Supp. 3d at 72.[8] Plaintiffs identify no authority or other basis to suggest that such a right is "deeply rooted in this Nation's history and tradition," *Dobbs*, 597 U.S. at 231, and the Court is aware of none.

Thus, plaintiffs' substantive due process claim is subject to rational basis review. In that context, we begin with the recognition that while the Due Process Clause assuredly "includes some generalized due process right to choose one's field of private employment," that right is "subject to reasonable government regulation." *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999). Moreover, the cases recognizing such a

---

[8] The Second Circuit took no position on this description, writing that the plaintiffs had "affirmatively disavowed" any substantive due process claim on appeal. *Nnebe 2019*, 931 F.3d at 89.

12

right deal with "a complete prohibition of the right to engage in a calling," *id.* at 292, not with (as is the case here) regulations reasonably calculated to protect public safety. *See, e.g.*, *Dent v. West Virginia*, 129 U.S. 114 (1889) (upholding licensing requirement for medical practitioners). As discussed above, the plaintiffs have not plausibly alleged that the existing TLC regulations governing license suspensions are unreasonable or otherwise unlawful. Accordingly, plaintiffs' substantive due process claim fails.

**C.   Non-Federal Claims**

Having dismissed the federal claims, the Court declines to exercise supplemental jurisdiction over the remaining non-federal claims. 28 U.S.C. § 1367(c)(3); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004).

### IV.   Conclusion

For the foregoing reasons, the defendants' motion to dismiss is granted. Plaintiffs' due process claims are dismissed with prejudice, given that they do not seek leave to amend, and amendment would be futile in any case. *See Gallop v. Cheney*, 642 F.3d 364, 370 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request that was not made."); *Forman v. Davis*, 371 U.S. 178, 182 (1962) (courts may deny leave to amend based on the "futility of amendment"). The remaining non-federal claims are dismissed without prejudice.

13

The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

    /s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:    December 8, 2025
            Brooklyn, New York